J-S86031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILLIAM ALBERSTADT | |
| Appellant | No. 632 WDA 2016 |

Appeal from the PCRA Order April 5, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0001947-2013

BEFORE:  GANTMAN, P.J., MOULTON, J., and STEVENS, P.J.E.*

MEMORANDUM BY GANTMAN, P.J.:          **FILED NOVEMBER 21, 2016**

Appellant, William Alberstadt, appeals from the order entered in the Erie County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court fully set forth the relevant facts and procedural history of this case in its opinions.  Therefore, we have no reason to restate them.[2]

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] Appellant filed a timely *pro se* PCRA petition on August 7, 2015.  The court appointed counsel, who subsequently filed a motion to withdraw and no-merit letter per **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).  The court issued Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing on October 20, 2015.  On October 29, 2015, Appellant secured new counsel, who sought an extension of time to file a
*(Footnote Continued Next Page)*

_____

*Former Justice specially assigned to the Superior Court.

Appellant raises four issues for our review:

WAS [THERE] A CONFLICT OF INTEREST WHERE [THE COURT] FOUND A CONFLICT EXISTED IF APPELLANT ENTERED A GUILTY PLEA AFTER COUNSEL ADVISED THE COURT THERE WAS A CONFLICT IN THAT THEY ADVISED APPELLANT TO ACCEPT THE PLEA BARGAIN AND APPELLANT DECLARED THAT HE WANTED A JURY TRIAL?

ONCE [THE COURT] RULED THAT THERE WOULD BE A CONFLICT OF INTEREST IF APPELLANT ENTERED A GUILTY PLEA IF REPRESENTED BY [PLEA] COUNSEL, WAS IT IMPROPER FOR ANOTHER JUDGE TO ACCEPT A PLEA IN THIS CASE?

DID [PLEA] COUNSEL ABANDON APPELLANT WHEN THEY TOLD HIM THAT THEY WOULD NOT REPRESENT HIM IN A JURY TRIAL EVEN THOUGH [THE COURT] DENIED THEIR MOTION TO WITHDRAW BASED UPON A CONFLICT OF INTEREST AND ORDERED THEM TO TRIAL?

DID [PLEA] COUNSEL COERCE APPELLANT TO ENTER A PLEA AGAINST HIS FREE WILL?

(Appellant's Brief at 3).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. ***Commonwealth v. Ford***, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959

*(Footnote Continued)* ─────────────

supplemental PCRA petition. The court granted the request and new counsel filed the supplemental PCRA petition on November 23, 2015. The court held a PCRA hearing on March 2, 2016, and ultimately denied PCRA relief on April 5, 2016. Although the PCRA court opinion filed March 16, 2016 suggests Appellant's supplemental PCRA petition might be construed as a second PCRA petition, the record makes clear the current petitions collectively constitute Appellant's first attempt at collateral relief.

A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. **Commonwealth v. Dennis**, 609 Pa. 442, 17 A.3d 297 (2011).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable William R. Cunningham, we conclude Appellant's issues merit no relief. The PCRA court opinions comprehensively discuss and properly dispose of the questions presented. (**See** PCRA Court Opinion, filed October 20, 2015, at 2-7; PCRA Court Opinion, filed March 16, 2016, at 3-7; PCRA Court Opinion, filed June 2, 2016, at 1-4) (finding: evidence against Appellant was significant, including Victim's videotaped statement describing Appellant's sexual acts, photographs Appellant took of Victim in suggestive poses, and Appellant's statements to police describing his granddaughter as "saucy looking girl" with "cute little body"; when Appellant admitted to counsel that Appellant had oral sex with his granddaughter but told counsel he would lie on witness stand, Appellant created ethical dilemma for his attorneys, prompting attorneys to file motion to withdraw; court ultimately denied motion to withdraw and informed counsel that Appellant could testify in narrative form to avoid any ethical issues; court's denial of motion to withdraw in no way

precluded possibility of Appellant entering guilty plea at later date; although Appellant voiced desire to go to trial during hearing on motion to withdraw, material circumstances changed following that hearing; specifically, counsel learned after hearing on motion to withdraw that Appellant attempted to bribe his son-in-law to make charges disappear (which would have been very damaging to Appellant if presented at trial), and Commonwealth offered more favorable plea bargain; upon these changed circumstances, counsel explained to Appellant benefits of entering guilty plea but left choice to Appellant; court engaged in thorough plea colloquy which confirmed Appellant's decision to plead guilty was of his own volition;[3] Appellant's attorneys did not abandon Appellant and were prepared to go to trial had Appellant made that choice; significantly, Appellant did not seek to withdraw plea after sentencing; Appellant's testimony at PCRA hearing was incredible;

---

[3] Given the current state of the law regarding mandatory minimum sentencing statutes, we depart from the PCRA court's references to the Commonwealth's sentencing offer, which contained no mandatory minimum, as one ground to assess plea counsels' effectiveness. On appeal, Appellant makes no claim that, but for his fear of a mandatory minimum sentence, he would not have pled guilty. Instead, Appellant challenges the guilty plea solely on counsels' alleged threat to abandon him if Appellant decided to go to trial. The record belies that contention, however, and makes clear Appellant's decision to plead guilty was knowing, intelligent, and voluntary. Additionally, the record confirms the Commonwealth agreed to seek *nolle prosequi* on nine of the ten charges against Appellant in exchange for his guilty plea to one count of involuntary deviate sexual intercourse. As well, the Commonwealth had overwhelming evidence against Appellant in this case. Thus, counsels' advice to Appellant to enter a guilty plea was reasonable under the circumstances of this case.

Appellant failed to prove ineffective assistance of counsel in connection with his guilty plea). Accordingly, we affirm on the basis of the PCRA court's opinions.[4]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2016

_____

[4] In its opinion filed June 2, 2016, the PCRA court references a direct appeal in this case. The record confirms Appellant did not seek direct review. Instead, Appellant timely filed a PCRA petition following sentencing.

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

:

N.5 OCT 20 PM 3: 21 : OF ERIE COUNTY, PENNSYLVANIA

:

WILLIAM ALBERSTADT : NO. 1947 OF 2013

## NOTICE OF INTENT TO DISMISS PCRA PURSUANT TO PA. R. CRIM. P. 907

And now, to-wit, this ____ day of October, 2015, after an independent review of the record, and consideration of Petitioner's *pro se* Petition for Post Conviction Collateral Relief ("PCRA") and the "no-merit" letter filed by PCRA counsel, the Petitioner has failed to state a meritorious claim under the Post Conviction Relief Act. Because Petitioner's Motion can be addressed based on the existing record, there is no need for an evidentiary hearing.

## BACKGROUND

On May 20, 2014, while represented by Attorney Eric Hackwelder, Petitioner entered a guilty plea to one count of involuntary deviate sexual intercourse with a child as part of a negotiated plea. 18 Pa.C.S.A. §3123(b). Petitioner was sentenced by this Court on August 25, 2014 to eight years to sixteen years of incarceration consistent with the plea agreement between the parties. Petitioner did not file a post sentence motion or a direct appeal to the Superior Court.

Petitioner filed a timely *pro se* PCRA on August 7, 2015, arguing ineffective assistance of counsel and prosecutorial misconduct.[1] On August 10, 2015, Attorney William Hathaway was appointed as PCRA counsel. On September 28, 2015, Attorney Hathaway filed a "no merit" letter and a Petition for Leave to Withdraw as Counsel.

---

[1] Petitioner's claim of prosecutorial misconduct is waived as it could have been raised on direct appeal. Insofar was this claim relates to Petitioner's claim of ineffective assistance of counsel, it will be discussed below. See Pa.C.S.A. §9543(a)(3).

1

## DISCUSSION

Because Petitioner entered a plea of guilty, the only cognizable issues available to him in a post conviction proceeding are the validity of the plea of guilty and the legality of the sentence. *Commonwealth v. Rounsley*, 717 A.2d 537, 538 (Pa. Super. 1998).

Petitioner claims his guilty plea is not valid because it was the result of extortion, blackmail and collusion between his counsel and the prosecution. Petitioner makes a variety of allegations, including that trial counsel "abandoned Petitioner," "extorted Petitioner and knew Petitioner wanted to proceed to trial," that both trial counsel and Assistant District Attorney Elizabeth Hirz "committed attempted bribery toward Petitioner" and that Petitioner was "forced to admit guilt to save his life and family." *Pro-Se PCRA Petition pp. 5-6.*

Counsel's ineffectiveness can serve as the basis for relief in connection to a guilty plea only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. *Commonwealth v. Barndt*, 74 A.3d 185, 192 (Pa. Super. 2013). "In determining whether a guilty plea was entered knowingly and intelligently, a reviewing court must review all of the circumstances surrounding the entry of that plea." *Commonwealth v. Fears*, 86 A.3d 795, 806 (Pa. 2014)(internal citations omitted). A plea is not voluntary if counsel's advice was outside the "range of competence demanded of attorneys in criminal cases." *Commonwealth v. Rathfon*, 899 A.2d 365, 369 (Pa. Super. 2006). A petitioner must establish there is "a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." *Fears*, 86 A.3d at 806.

In this case, the record reflects a thorough and detailed plea colloquy with Petitioner which belies every allegation within his PCRA Petition.

2

While under oath during his plea colloquy, Petitioner represented to the prosecutor that he understood all of the rights that he was waiving with his plea; the maximum sentence that he faced; that the Commonwealth was waiving the mandatory minimum sentence of ten years and agreeing with Petitioner to a sentence of eight to sixteen years. *Plea Transcript (hereafter P.T.), pp. 2-5.* Petitioner understood the sentencing position of the parties was not binding on the sentencing judge. *P.T. p.3.* Petitioner accepted that he would be required to register under Megan's Law for the rest of his life. *P.T. p.5.*

The legal and factual bases for the charge of involuntary deviate sexual intercourse with a child were then reviewed with Petitioner:

> MS. HIRZ: Thank you. At this time, sir, I'm going to show you the Criminal Information in this case which sets forth the legal definition and factual basis. Turning to Count 1, it is alleged from February 2004 through February 25[th], 2011, in the County of Erie, you did engage in deviate sexual intercourse with another person, and that person is less than 13 years of age, specifically, your granddaughter with the initials ERS, date of birth 2/98, to 6 through 12 years old at the time of the incidents and that you did perform oral sex on her occurring in Harborcreek Township, thereby you did commit the crime of involuntary deviate sexual intercourse with a child, felony of the first degree. How do you plead to Count 1?
>
> MR. ALBERSTADT: Guilty.
>
> MS. HIRZ: If it's your intent to plead guilty to Count 1, I'm going to have you sign on the back of this sheet, put today's date. Sign right there, sir.
>
> *P.T. pp. 5-6.*

Thereafter the Court engaged in a lengthy colloquy with Petitioner, including these excerpts:

> THE COURT: Mr. Alberstadt, do you understand everything that's been explained to you so far?
>
> MR. ALBERSTADT: I do.
>
> THE COURT: Do you have any questions at all?
>
> MR. ALBERSTADT: No, I don't.
>
> THE COURT: Do you understand the rights that you waive or give up when you enter a plea?

3

MR. ALBERSTADT: Yes.

........

THE COURT: Have you had enough time to think about what to do in your case?
MR. ALBERSTADT: Yes.
THE COURT: Are you satisfied with the legal representation you've received?
MR. ALBERSTADT: Yes, I am.
THE COURT: Do you understand this offense you're entering a plea to?
MR. ALBERSTADT: Yes, I do.
THE COURT: Do you understand the legal and factual basis for it?
MR. ALBERSTADT: Yes.
THE COURT: Do you need any further explanation of it?
MR. ALBERSTADT: No, sir.
THE COURT: Are you guilty of this offense?
MR. ALBERSTADT: Yes.
THE COURT: Do you feel like anyone is pressuring you or forcing you or promising you anything to get you to plead here today?
MR. ALBERSTADT: No.
THE COURT: Do you feel like you're giving up any valid legal defense when you enter your plea here today?
MR. ALBERSTADT: Pardon me, sir?
THE COURT: Do you feel like you're giving up any valid legal defense when you enter your plea?
MR. ALBERSTADT: No, sir.

*P.T. pp. 6-8.*

The discussion with Petitioner continued with a review of the parameters of his negotiated sentence. Throughout this discussion Petitioner evinced his understanding the sentencing position of the parties was not binding on the sentencing judge and that he could withdraw his plea if the Court advised him prior to sentencing that the sentencing agreement would not be honored. *P.T. pp. 8-11.*

At the end of his plea colloquy the Petitioner acknowledged that he was not under the influence of any substance affecting his ability to enter the plea; that he had no further questions and his plea of guilty was knowingly and voluntarily entered. *P.T. pp. 11-12.*

4

Throughout his plea colloquy Petitioner actively interacted with his counsel, the prosecutor and the Court. Petitioner is an educated, successful businessman and a Navy veteran. He certainly has the skill set and life's experiences to express any concerns he had about extortion, blackmail, bribery or collusion involving his trial counsel. Petitioner had many opportunities to state any such concerns and he failed to do so. In fact, the record reflects a viable, trusting relationship with his trial counsel.

Petitioner also had ample time between his plea and his sentencing to report any concerns about extortion, blackmail, bribery or collusion involving his trial counsel. Petitioner entered his plea on May 20 and was sentenced over three months later on August 25. During that time, Petitioner never reported any concerns about his counsel to the probation officer preparing the Pre-Sentence Report, to the Office of Disciplinary Counsel for Pennsylvania lawyers, to any law enforcement agency or to the Court. There is nothing of record that Petitioner sought to fire trial counsel and hire new counsel or request an appointed lawyer. Petitioner never requested a continuance of his sentencing date so that he could secure new counsel.

At sentencing Petitioner expressed thoughts about withdrawing his plea but never mentioned any concerns about his trial counsel. Ultimately, Petitioner represented under oath that he decided not to withdraw his plea, instead to accept responsibility for his actions:

> THE DEFENDANT: Yes sir. I apologize to the Court, to the families, to my wife of 50 years. I wish I could have been a better person. I think I was a good person up until recently. I did everything with measured steps. I joined the Navy, I did -- I fought for my country, I did everything I could to be a good citizen. I didn't -- I didn't look for any of this, I just -- it just is something that I don't understand it myself, Your Honor. But I have a wonderful wife there and I'm -- I'm worried for her. I'm worried for her. I had intentions of coming here and changing -- asking to change my plea to guilty but -- or not guilty I should say. And then talking with Eric Hackwelder, I don't know if that would work out anyhow. I -- there's a lot of family mistakes that family made. You know, they were letting their little girl watch these R-rated movies and also sleeping with a 14-year-old brother when she was nine years old. And there was things that happened. And that's

incest. Many times, I guess. She didn't tell me till well after the fact, but she did tell me. She's a good girl. I loved her dearly. I still do. But --. I guess that's all I have to say, sir.

*Sentencing Transcript August 25, 2014 (S.T.), pp. 10-11.*

Petitioner did not state he was considering withdrawing his guilty plea because it was coerced or involuntary nor did he express any concerns about his lawyer. Instead, Petitioner resolved to go forward with sentencing because he did not think withdrawing his plea "would work out anyhow."

As a factor in imposing Petitioner's sentence, the Court took into account Petitioner's remorse and his willingness to accept responsibility by way of his plea to a serious offense. ST pp. 18-19. Hence, Petitioner had the benefit of his decision to plead guilty.

Petitioner's testimony under oath at his plea and sentencing hearings negates *en toto* the allegations in his PCRA Petition. In fact, to accept Petitioner's current allegations means Petitioner lied under oath at both proceedings. Petitioner cannot seek post conviction relief on the basis he lied under oath during his plea and sentencing hearings. *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003); *see also Commonwealth v. Cappelli*, 489 A.2d 813, 819 (Pa. Super. 1985).

Petitioner has also failed to establish how trial counsel's work was outside the range of professional competence. Petitioner overlooks the fact it was the work of trial counsel that resulted in the Commonwealth's agreement to waive the mandatory minimum sentence of ten years thereby paving the way for Petitioner's sentence below the mandatory minimum. Advising the Petitioner to plead guilty to a crime carrying a sentence less than the statutory maximum is within the realm of professional competence.

6

## CONCLUSION

For the reasons stated herein, Petitioner's claims are waived and/or without merit.

Petitioner is hereby put on notice that his Motion for Post Conviction Collateral Relief regarding the guilty plea will be dismissed after twenty (20) days from the date of this Notice. Within this same time period, Petitioner shall have the right to file any Objections to this Notice.

BY THE COURT:

_____

WILLIAM R CUNNINGHAM, JUDGE

cc:   District Attorney's Office
      William J. Hathaway Esq. 1903 West 8th Street Suite 261 Erie, PA 16505
      William Joseph Alberstadt LR- 8682, SCI Fayette, PO Box 9999 La Belle, PA 15450

7

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

v. : OF ERIE COUNTY, PENNSYLVANIA

WILLIAM J. ALBERSTADT : NO. 1947 OF 2013

## NOTICE OF INTENT TO DISMISS PCRA PURSUANT TO PA. R. CRIM. P. 907

The presenting matter is a second request for relief under the Post Conviction Relief Act (PCRA) involving separate attacks on the effectiveness of trial counsel. After an evidentiary hearing, the request for relief within two PCRA Petitions is **DENIED** for the reasons set forth in the October 20, 2015 Notice of Intent to Dismiss and those reasons stated hereafter.[1]

## PROCEDURAL BACKDROP

On August 7, 2015, Petitioner filed a *pro se* PCRA with a request for appointed counsel. Attorney William Hathaway was appointed counsel and given additional time to file any supplemental PCRA petition. Attorney Hathaway filed a "no merit" letter based on his determination Petitioner does not have a basis for PCRA relief. Thereafter, this Court filed a Notice of Intent to Dismiss PCRA on October 20, 2016.

On October 29, 2015, Petitioner filed a Motion for Extension of Time to File Supplemental Petition, which was granted by Order dated October 30, 2015.

Attorney Paul Gettleman filed a second Petition for Post Conviction Relief on November 23, 2015, claiming Attorneys Eric Hackwelder and Stephen Sebald were ineffective for failing to conduct an investigation or prepare a defense in anticipation of trial and as a result the guilty plea entered by Petitioner was not voluntarily entered.

[1] Petitioner is actually getting two bites of the PCRA apple since two petitions are litigated herein. Rather than find waiver on the second petition, a record was created to address both petitions for the sake of judicial economy. Left for another day is the determination of whether a future PCRA petition is a second or third petition.

1

An evidentiary hearing was held on March 2, 2016. Petitioner and Attorney Eric Hackwelder testified at the March 2, 2016 hearing. The Commonwealth stipulated to the authenticity of the verified statements attached to the Motion to Supplement the PCRA Petition eliminating the need for the testimony of character witnesses Walter Skopow and Robert Curtis.

## SUMMARY OF TESTIMONY

Attorney Hackwelder met with Petitioner about 20 times during his representation. On May 9, 2014, while meeting with Attorneys Hackwelder and Sebald to prepare for trial, Petitioner admitted to having oral sex with the victim but said he intended to testify to his innocence at trial. Attorney Hackwelder explained that he could not ethically suborn perjury and therefore would have to withdraw as counsel.

On May 15, 2014, a hearing on the Motion to Withdraw as Counsel occurred before the Honorable Judge Ernest J. DiSantis, Jr. The Motion to Withdraw was denied with the understanding that if Petitioner elected to go to trial and if Petitioner decided to testify he could do so in narrative form, obviating any ethical concerns of his attorneys.

On May 19, 2014, Petitioner met again with his attorneys at which point it came to light that Petitioner and his son-in-law had discussed dropping the case in exchange for a sum of money. Attorney Hackwelder explained to Petitioner that if this information was testified to at trial, it could be devastating and suggested it would be in Petitioner's best interest to take the plea bargain offered by the Commonwealth.

Petitioner testified he never met with Attorney Hackwelder between the May 15, 2014 hearing and May 20, 2014 when Petitioner entered a guilty plea. Petitioner testified he did not understand the grounds for the Motion to Withdraw as Counsel filed by Attorneys Hackwelder and Sebald and believed they would not represent him if he wanted to proceed to trial. Petitioner

2

testified he did not want to enter the guilty plea on May 20, 2014 but felt that he had no choice because his attorney was not prepared for trial and he had no money for another attorney.

## FINDINGS OF FACT/ CONCLUSIONS OF LAW

In sum, Petitioner wants to portray himself as an innocent victim of his greedy lawyers who took all of his money and abandoned him on the eve of his trial.[2] The truth does not support any of Petitioner's allegations in his original and supplemental PCRA Petitions except for the fact that there were character witnesses available to testify at trial (to an unspecified character trait).

The reality is that Petitioner's conduct made the defense of his case difficult at trial. Petitioner had the benefit of viewing the videotaped interview of his granddaughter, the victim, who provided the sexual details of each crime, including that Petitioner had her perform oral sex on him and that he touched her vagina with his hands. Her video statement also discussed Petitioner's bribes of money and games of chance in exchange for sex.

There was objective physical evidence of photographs Petitioner admittedly took of his granddaughter in suggestive poses wearing a bathing suit. Petitioner could offer little justification, if any, to his lawyers for these photos.

The police would testify about incriminating admissions by Petitioner that he had "crossed the line" with his granddaughter and what they did was illegal but not anything different than what he did with his daughter. Further, that his granddaughter was a "saucy looking girl" who "had a cute little body" and that Petitioner worships the young. While

---

[2] This testimony is in addition to the accusations in Petitioner's first PCRA that his plea was the result of his lawyers' attempts to extort and blackmail him while in collusion with the prosecutor. Petitioner presented no evidence in support of these accusations.

Petitioner tries to rationalize these statements away, or accuses the police of lying, if found credible by a jury, this evidence would be very damaging to Petitioner.

The Commonwealth could have adduced the testimony from Petitioner's son-in-law about discussions prior to trial in which Petitioner would pay money to the son-in-law for the case to go away. Petitioner disputes he initiated the call but admits participating in this discussion with his son-in-law. From the beginning of their representation when this subject was broached by Petitioner, his lawyers advised Petitioner not to engage in this type of negotiation. Yet Petitioner did anyway. While the jury may not know of the advice from Petitioner's counsel, the fact these discussions occurred is evidence of Petitioner's consciousness of guilt which would need to be explained away to the jury.

Petitioner's counsel were further challenged by the Petitioner's admission to them he did have oral sex with his granddaughter, which was the heart of the Commonwealth's case. This created an immediate ethical dilemma for his lawyers, who informed him they could not put him on the stand to suborn perjury. Petitioner responded to his lawyers that he had paid them a lot of money so that they could lie for him, which is enlightening as to Petitioner's mindset.

These discussions prompted Petitioner's counsel to file a Motion to Withdraw, which was denied by Judge DiSantis.

Prior to trial, Petitioner's lawyers met with him numerous times to discuss trial strategy and relayed their ethical concerns and the difficulties in presenting a defense. Petitioner now claims the ethical concerns of his lawyers were easily remedied by not calling him as a witness at trial. While true, Petitioner ignores how his failure to testify would impede his ability to mount a defense. It meant that Petitioner would not be able to explain away the provocative pictures he took of his granddaughter, his incriminating statements to the police, his alleged bribery

4

negotiation with his son-in-law or provide any explanation why his granddaughter would be testifying under oath about all of these sexual acts and other inappropriate conduct by her grandfather. Petitioner does not have the burden of proving that he is not guilty, but without Petitioner's testimony, his ability to challenge the Commonwealth's case was seriously compromised.

In the absence of Petitioner's testimony, the only proffered witnesses by Petitioner were character witnesses. Throughout the trial preparation of this case, Attorney Hackwelder discussed with Petitioner the use of character witnesses at trial. At the request of Petitioner, Attorney Hackwelder asked Petitioner's brother to be a character witness, but the brother declined. Petitioner wavered about whether his wife should be a character witness. Attorney Hackwelder met with her on more than one occasion to discuss her testimony. As Petitioner's wife, there is an inherent bias adversely affecting her credibility. Petitioner also provided counsel with the names of two other character witnesses who could testify at trial. Such testimony could have been easily presented by his lawyers if Petitioner had chosen to go to trial.

Unquestionably Petitioner's lawyers were ready and able to try this case had Petitioner opted to go to trial. Although Petitioner voiced his desire to go to trial during the hearing on the Motion to Withdraw, Petitioner's intent, like that of anyone else, is subject to change particularly when the circumstances change. There were at least two material circumstances that changed between the proceeding before Judge DiSantis and Petitioner's plea.

First, the negotiation between Petitioner and his son-in-law involving the payment of money to drop the charges occurred, which could be devastating evidence against Petitioner. The second change was the plea offer from the Commonwealth with significantly reduced exposure at sentencing below the mandatory minimum.

5

Attorney Hackwelder explained the options to Petitioner and left it up to Petitioner to decide whether to plead or go to trial. The plea colloquy with Petitioner was extensive and corroborated Attorney Hackwelder's testimony.

The undeniable reality is that it was Petitioner who chose to forego a trial and enter a favorable guilty plea. There was a comprehensive plea colloquy with Petitioner in which he had ample opportunity to express any concerns about what he was doing or complain about his lawyers. Petitioner was advised at the time of his plea that a motion to withdraw would be entertained by this Court. Petitioner had between his plea on May 20, 2014 and his sentencing on August 25, 2014 to digest what occurred at his plea and to seek to withdraw it.

Petitioner's testimony at the PCRA hearing on March 2, 2016 was self-serving, dishonest and inherently contradictory. Petitioner's accusations against his lawyers involve egregious, criminal conduct with no explanation why he never mentioned this conduct during his plea or months later at his sentencing. There is no credible evidence to suggest that Petitioner's plea was not knowing and voluntary. To grant Petitioner relief now would be to reward him for lying under oath at his plea and subsequent sentencing. *See Commonwealth v. Bishop*, 645 A.2d 274, 277 (Pa.Super.1994); *see also Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa.Super.2003).

While it is always difficult to predict the outcome of any jury trial, it is understandable under these circumstances why his lawyers advised Petitioner to accept the plea bargain which significantly reduced his sentencing exposure. In securing this plea bargain and recommending it to Petitioner, while leaving the decision whether to accept it up to Petitioner, Petitioner's counsel undertook a reasonable course of action that did not deprive Petitioner of the effective assistance of counsel. *See Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 783 (Pa. Super. 2015).

6

## CONCLUSION

Petitioner entered a knowing and voluntary plea on May 20, 2014. At that time, Petitioner's lawyers had investigated Petitioner's case and were prepared to try the case had Petitioner chosen to do so (including the presentation of character witnesses). At no time did his lawyers abandon Petitioner. To the contrary, Petitioner's lawyers negotiated a favorable plea bargain which in Petitioner's words to his counsel "saved my life." There is no credible evidence of any ineffectiveness of counsel which caused Petitioner to enter an involuntary and unknowing plea.

Petitioner is hereby put on notice that he has twenty (20) days from the date of this Notice of Intent to Dismiss to file any Objections thereto. If none are filed, both of his PCRA petitions will be dismissed.

BY THE COURT:

Date: March 16, 2016

WILLIAM R. CUNNINGHAM, JUDGE

cc:   District Attorney's Office
      Paul Gettleman, 2181 Armstrong Road Portersville PA, 16501
      William Joseph Alberstadt LR- 8682 SCI Fayette, PO Box 9999 La Belle, PA 15450

7

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
                                        : OF ERIE COUNTY, PENNSYLVANIA
              v.             : CRIMINAL DIVISION
                                          :
WILLIAM ALBERSTADT,            : NO. 1947 of 2013

## OPINION

On May 2, 2016, Appellant filed a Notice of Appeal from the Order entered April 5, 2016, dismissing his Petition for Post Conviction Collateral Relief ("PCRA"). On May 16, 2016, Appellant filed a Concise Statement of Matters Complained of on Appeal, claiming:

1. A conflict of interest emerged when Appellant decided to enter a guilty plea;
2. Trial counsel was ineffective when he "refused" to call a good character witness;
3. "Trial counsel abandoned [Appellant] and told him that they would not represent him at a jury trial although Judge DiSantis denied their motion to withdraw . . . and ordered them to proceed with a jury trial;"
4. "Trial counsel coerced [Appellant] to enter a plea although [Appellant] clearly indicated to Judge DiSantis . . . he wanted a jury trial;" and
5. "[I]t was impermissible for another member of the bench to in effect overrule Judge DiSantis and let this case be pled out by the same attorneys who alleged that there was an irreconcilable difference in their representation of [Appellant]."

The issues raised by Appellant were addressed in the Notice of Intent to Dismiss PCRA Pursuant to Pa. R.C.P. 907 dated March 16, 2016, incorporated herein. Also incorporated herein is the Notice of Intent to Dismiss PCRA dated October 20, 2015 addressing Appellant's challenge to the validity of his plea.

The presenting issues on appeal are all devoid of a credible factual basis. The faulty premise of this appeal is the assumption this Court accepted as true Appellant's testimony at the PCRA evidentiary hearing on March 2, 2016. To the contrary, this Court

1

found Appellant's PCRA testimony to be self-serving, dishonest and inherently contradictory in its entirety.

Appellant also mischaracterizes the record from the May 15, 2014 hearing before the Honorable Judge Ernest J. DiSantis and the resulting order. Nothing within the hearing record or the Order of Judge DiSantis prevented a subsequent judge from accepting a knowing and voluntary plea from Appellant.

The issue addressed by Judge DiSantis was the ethical dilemma Appellant created on the eve of trial when Appellant informed trial counsel that he engaged in oral sex with his granddaughter but that he was going to lie about it during his testimony. When his trial counsel responded they could not put him on the stand to lie, Appellant said he paid them a lot of money to lie for him.

At the hearing on the ensuing Motion to Withdraw as Counsel, Judge DiSantis asked whether the basis for the conflict was "that [Appellant] wants to go to trial and you want him to plea" or "a conflict in strategy." Attorney Hackwelder described the conflict as a combination of both and specifically that there would be a conflict if Appellant intended to go to trial and testify. More detail could not be given because of the attorney client privilege. Discussing the issue as a hypothetical, Judge DiSantis indicated *if* Appellant wanted to go forward with a trial, and *if* Appellant wanted to testify, allowing him to testify in the narrative form would remedy any conflict. On this basis Judge DiSantis denied the Motion to Withdraw.

Contrary to Appellant's assertion, Judge DiSantis never found there was an irreconcilable difference between counsel and Appellant that precluded the possibility of a plea. As a matter of credibility, this Court found that trial counsel was able and willing

2

to represent Appellant at trial if that was the course he chose. Trial counsel was prepared to call at trial the two character witnesses Appellant now proffers.

As the events unfolded, the ethical dilemma created by Appellant never came to fruition because Appellant decided to enter a plea. On appeal, Appellant ignores the change of circumstances that occurred between the hearing before Judge DiSantis and his plea five days later. These circumstances include the uncontroverted participation by Appellant in discussions with the victim's father to have the charges dropped in exchange for cash from Appellant. This attempted bribery was unforeseeable by Judge DiSantis and could not have been addressed in his ruling on the Motion to Withdraw. Another development was a favorable plea offer extended by the Commonwealth on the day of Appellant's trial. Each of these circumstances altered the dynamics of Appellant's situation from what it was before Judge DiSantis.

Ultimately, the record reflects Appellant engaged in a very extensive, comprehensive plea colloquy that resulted in a knowing and voluntary plea unaffected by the alleged criminal and unethical accusations Appellant now levels against his trial counsel and the prosecutor. Nothing within the ruling by Judge DiSantis created a legal barrier preventing Appellant from subsequently entering a plea before another judge.

In sum, there could not have been a violation of the coordinate judge rule when Appellant's plea was accepted because there was no previous legal finding being overturned. *See Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). Further, Appellant provides no authority that a trial court judge can preclude a party from entering a plea before another trial judge.

3

Beyond challenging the factual findings of the Court, Appellant has failed to set forth a claim for appellate relief. To accept Appellant's defamatory allegations made after an unsuccessful direct appeal against his counsel and the prosecutor means he committed perjury during the plea colloquy and likewise engaged in a criminal conspiracy. Appellant is not entitled to legal relief for such behavior. *Commonwealth v. Bishop*, 645 A.2d 274, 277 (Pa.Super.1994).

No further Opinion shall issue. The Clerk of Records is hereby directed to transmit the record.

BY THE COURT:

Date: 6/2/11

WILLIAM R. CUNNINGHAM, JUDGE

cc: District Attorney's Office
Paul Gettleman, Esquire, 2181 Armstrong Road Portersville PA 16501

4