J-S84014-18

2019 PA Super 207

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANTHONY SHAW, | |
| Appellant | No. 1573 EDA 2018 |

Appeal from the PCRA Order Entered April 25, 2018
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006238-2010

BEFORE: BENDER, P.J.E., OTT, J., and FORD ELLIOT, P.J.E.

OPINION BY BENDER, P.J.E.:                    **FILED JULY 03, 2019**

Appellant, Anthony Shaw, appeals from the order dismissing his timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. After careful review, we reverse and remand for a new trial.

The PCRA court summarized the facts leading to Appellant's conviction as follows:

> On November 30, 2009 [Appellant] and an accomplice, Daniel Vincent, forced their way into the Darby Borough apartment of … [V]ictim, Alex Adebisi. [Victim] saw [Appellant] and Vincent "hanging" around his apartment building before the home invasion and in fact spoke with them. When the conversation concluded[,] [Victim] then went into his apartment where he was entertaining guests. [Appellant] and Vincent came to the door and asked [Victim] to change a hundred dollar bill. [Victim] accommodated the men and returned to his guests. When there was another knock at his door [Victim] assumed that it was a delivery of take-out food and he opened the door. [Appellant] and Vincent forced their way in and demanded money.

The two men assaulted [Victim] and [Appellant] shot him in the thigh and chest before fleeing. [Victim]'s guests, who were hiding in the bathroom, called 911. Eventually police officers and paramedics arrived and [Victim] was taken to a hospital where he was treated.

In addition to [Victim], a neighbor who lived two doors from [Victim] testified that he had seen [Appellant] and Vincent in front of the house earlier and that he had warned others to lock their doors. A guest of [Victim]'s also lived nearby. He saw two strangers outside the house. He asked them to leave and locked the door. A female guest saw Vincent enter the apartment and punch [Victim] before she ran to the bathroom to hide. After the incident when he was being treated for his injuries, [Victim] identified both [Appellant] and Vincent in separate photo arrays that he viewed on different days.

PCRA Court Opinion (PCO), 6/20/18, at 2-3 (quoting Trial Court Opinion, 12/17/13, at 2-3).

A jury convicted Appellant of attempted murder, robbery, aggravated assault, burglary, firearms not to be possessed without a license, possession of an instrument of crime, and criminal conspiracy to commit aggravated assault, robbery, and burglary. On December 15, 2011, the trial court sentenced him to an aggregate term of 15-30 years' imprisonment, and a consecutive term of five years' probation. Appellant's judgment of sentence was affirmed on direct appeal. *See Commonwealth v. Shaw*, 105 A.3d 794 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 106 A.3d 726 (Pa. 2015).

Appellant filed a timely, *pro se* PCRA petition, his first, on November 5, 2015. PCRA Counsel, Stephen Molineux, Esq., was appointed to represent Appellant on November 16, 2015. Attorney Molineux filed an amended PCRA

petition on Appellant's behalf on October 19, 2017. A PCRA hearing was held

on April 5, 2018. On April 25, 2018, the PCRA petition was denied. Appellant

filed a timely Notice of Appeal, and a timely, court-ordered Pa.R.A.P. 1925(b)

statement. The PCRA court issued its Rule 1925(a) opinion on June 20, 2018.

Appellant now presents the following questions for our review:

I.   Were Appellant's Fifth, Sixth and Fourteenth Amendment rights violated due to [trial] counsel's ineffective failure to file a pre-trial motion to preclude the in-court identification of … Appellant?

II.  Were Appellant's Sixth Amendment rights violated due to [trial] counsel's ineffective failure to request a **Kloiber**[1] instruction?

III. Were Appellant's Sixth Amendment rights violated due to PCRA counsel's ineffective failure to preserve a potentially meritorious claim which was the basis for the PCRA [c]ourt's evidentiary hearing?

Appellant's Brief at 3.

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

**Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal

citations omitted).

---

[1] **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

- 3 -

Appellant's claims concern the alleged ineffectiveness of his trial and PCRA attorneys.

> We begin with the presumption that counsel rendered effective assistance. To obtain relief on a claim of ineffective assistance of counsel, a petitioner must rebut that presumption and demonstrate that counsel's performance was deficient, and that such performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687–91[] (1984). In our Commonwealth, we have rearticulated the *Strickland* Court's performance and prejudice inquiry as a three-prong test. Specifically, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error. *Commonwealth v. Pierce*, 515 Pa. 153, 158–59, 527 A.2d 973, 975 (1987).

*Commonwealth v. Dennis*, 17 A.3d 297, 301 (Pa. 2011) (some internal citations omitted).

In Appellant's first claim, he asserts that trial counsel was ineffective for failing to seek to preclude Victim's in-court identification testimony by means of a pre-trial motion to suppress. Appellant argues that the pre-trial identification of him was so suggestive that the trial court would have suppressed the in-court identification of Appellant by Victim due to the taint of the pre-trial identification.

> Whether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances. Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. Identification evidence will not be suppressed unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

> Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics.

*Commonwealth v. Fulmore*, 25 A.3d 340, 346 (Pa. Super. 2011) (cleaned up). Furthermore, "[f]ollowing a suggestive pre-trial identification procedure, a witness should not be permitted to make an in-court identification unless the prosecution establishes by clear and convincing evidence that the totality of the circumstances affecting the witness's identification did not involve a substantial likelihood of misidentification." *Commonwealth v. Fowler*, 352 A.2d 17, 19 (Pa. 1976).

The PCRA court found that Appellant's claim lacked arguable merit for the following reasons:

> [Appellant] alleges that [Victim]'s pre-trial identification tainted his in-court identification and that trial counsel was ineffective for failing to file a motion to suppress. In support[,] he alleges only that [Victim] chose [Appellant]'s "picture very quickly after indicating that two guys that he had never seen before, walked up to him and shot him" and also describes[,] *inter alia*, discrepancies between [Victim]'s description of his assailants and the actual appearance of [Appellant] and his co-defendant. These allegations do not in any way raise the specter of an unduly suggestive identification procedure. Rather, they are matters that the jury would properly consider in determining the accuracy of [Victim]'s identification and the weight to assign his testimony. This claim has no merit.

> At trial[,] Officer Charles Schuler of the Darby Borough Police Department testified that he traveled with [Victim] in an ambulance that transported them to the University of Pennsylvania Hospital following the shooting. During the transport Officer Schuler attempted to interview [Victim] because there was a concern that [Victim] would die as a result of the injuries that he sustained. [Victim] appeared to be in a great deal of pain and the EMT's were tending to his wounds and administering oxygen. Officer Schuler reported that [Victim] said

- 5 -

that he was shot by two men that he had never seen before. One was a small, dark-skinned black man wearing a gray hoodie and [Victim] could not remember anything about the second man. During the course of this interview Officer Schuler was repeatedly interrupted by medics and at other times [Victim] was unable to respond. At the hospital[,] [Victim] was immediately taken to a trauma bay and he was not questioned any further. Officer Schuler was told that [Victim] couldn't answer any more questions. [Victim] was in a coma for two days following emergency surgery. At trial[,] [Victim] testified that he did not recall speaking to Officer Schuler during his transport and that he had no recollection of ever saying that he had never seen the two men before.

On December 2, 2009[,] after [Victim] regained consciousness[,] Lieutenant Richard Gibney of the Darby Borough Police Department visited him while he was in the Intensive Care Unit. At trial[,] Lieutenant Richard Gibney testified that he went to the hospital and spoke with [Victim] after he was out of immediate danger of death. He offered [Victim] the photo array with instructions to take his time and to let the Lieutenant know if he saw the man who shot him. [Victim] scanned the photos and immediately chose [Appellant]'s photo. The Lieutenant asked if [Victim] was "positive" and confirmed that medication did not hamper his ability to make identification. "[Victim] was very clear and very positive that this was the man who shot him."

There is absolutely no evidence, from within or outside the record, that support[s] a claim that [Victim]'s in-court identification was tainted by an unduly suggestive procedure that created a substantial likelihood of a[n] irreparable misidentification. Counsel will not be deemed ineffective for failing to raise a meritless claim.

PCO at 5-6 (citation omitted).

We agree with the PCRA court. There was no evidence presented that the photo lineup shown to Victim was unduly suggestive. The fact that Victim's initial descriptions did not comport with his photo-array identification goes to the credibility, not the suggestiveness of the identification procedure. *See*

*Commonwealth v. Kyle*, 533 A.2d 120, 132 (Pa. Super. 1987) (holding that the discrepancies between an initial description and the person identified in a photo array concern "credibility," not "undue suggestiveness").

Appellant further argues that Lt. Gibney's statement to [Victim] just prior to the photo lineup tainted the initial identification of Appellant, where the officer told Victim not to waste his time, and that he would close the case if Victim refused to cooperate. Appellant's Brief at 9. Appellant believes this pressured Victim to make an identification. However, on its face, this was not evidence that the photo array was unduly suggestive. At best, this was further evidence pertaining to the credibility of Victim's identification of Appellant.

Moreover, Appellant sought to exclude the out-of-court identification in a pre-trial suppression motion, albeit unsuccessfully. As this Court has previously ruled, when "nothing in the record indicates any of the pretrial proceedings were tainted, we need not reach the second question of whether the in-court identification is inadmissible based on the suggestiveness of the out-of-court identifications and lacking an independent basis." *Fulmore*, 25 A.3d at 349; *see also Commonwealth v. Johnson*, 668 A.2d 97, 103 (Pa. 1995) ("Because the out-of-court identifications were not tainted, we need not address [the] appellant's argument that the in-court identifications lacked an independent basis."). Here, Appellant was not prejudiced by his trial attorney's failure to seek suppression of Victim's in-court identification because the out-of-court identification was already ruled admissible. Accordingly, Appellant is not entitled to relief on his first ineffectiveness claim.

Next, Appellant contends that his trial attorney was ineffective for failing to seek a *Kloiber* instruction. "A *Kloiber* charge is appropriate where there are special identification concerns: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past." *Commonwealth v. Reid*, 99 A.3d 427, 448 (Pa. 2014). Here, Appellant argues that a *Kloiber* instruction was appropriate based on the allegations presented in his first claim that the photo array was unduly suggestive and due to the discrepancies with Victim's initial description.

The PCRA court rejected this claim because:

Through [Victim]'s trial testimony[,] the Commonwealth established that he recognized both [Appellant] and his co-defendant from two interactions earlier in the day. His assailants forced their way into his apartment and he recognized them immediately. When he came out of his coma days after the shooting[,] he quickly identified [Appellant]. At trial[,] his in-court identification was unequivocal on both direct and on cross[-]examination. Under these circumstances, the statements [Victim] gave during his ambulance ride where he was unable to give a description of [Appellant] provided trial counsel an opportunity to challenge his credibility but it was not a mis[]identification warranting a *Kloiber* instruction.

PCO at 8-9 (citation, quotation marks, and footnote omitted).

We again agree with the PCRA court. None of the factors warranting a *Kloiber* charge were present in this case. Victim had three opportunities to view Appellant before and during the assault, and he never equivocated in his identification before or during the trial. Accordingly, there is no arguable merit to this ineffectiveness claim.

- 8 -

Finally, Appellant argues that his PCRA counsel, Stephen Molineux, Esq., was ineffective for failing to preserve a potentially meritorious claim in Appellant's Rule 1925(b) statement. Specifically, Appellant asserts that Attorney Molineux should have preserved a claim that trial counsel was ineffective for failing to seek to amend the alibi notice prior to trial. We agree.

Through his mother, Monique Shaw,[2] Appellant informed trial counsel that he had two potential alibi witnesses, April Wynn and Devon Crowley,[3] and he gave counsel contact information for those individuals. As Appellant explains:

> Crow[le]y and Appellant lived together prior to Appellant's arrest. Crow[le]y was pregnant with Appellant's child. The Commonwealth contended that the crime occurred in Darby between 4:00 pm and 4:30 pm.[4] Appellant and his mother told trial counsel that Appellant had been with Crow[le]y during this period of time and then he went to Wynn's house around 5:30 pm and remained there through the next day. []N.T.[,] 4/5/18[, at] 33, 52, 55.

> While counsel met with Wynn, he did not contact Crow[le]y. [*Id.* at] 15, 31[]. However, still believing that Crow[le]y was willing to testify to the alibi, counsel drafted and filed a Notice of Alibi on April 29, 2011. [*Id.* at] 31, 34[].

Appellant's Brief at 18.

_____

[2] Ms. Shaw hired trial counsel for her son.

[3] There are variations of the spelling of the surname 'Crowley' in the record and in the parties' briefs; the name also appears at times as 'Cowley' and 'Crawley.' For consistency, we use 'Crowley' throughout this opinion.

[4] The testimony of the Commonwealth's witnesses at trial, however, established that the crime had occurred no earlier than 7:00 p.m. **See** Footnote 8, *infra*.

The Notice of Alibi read, in pertinent part, as follows: "[Appellant] denies committing these crimes. [Appellant] contends that [at] the time of the commission of the alleged crimes, he was with April Wynn, who resides at ..., and Devon [Crowley], who resides at ...." Notice of Alibi, 5/2/11, at 1. Trial counsel further stated in the alibi notice:

> The substance of the testimony of April Wynn and Devon Crowley will be that at the time of the commission of the alleged crimes, [Appellant] was with them and they were in Philadelphia and not in Darby at [the location of the crime] at the time of the alleged assault upon [Victim].

*Id.* at 2.

Thus, the alibi notice indicated that Appellant was with *both* Wynn and Crowley at the time of the offense. At the PCRA hearing, trial counsel admitted that Appellant had told him otherwise: that he was with Crowley during the first part of the day, and later went to visit with Wynn at 5:30 p.m., where he remained overnight. *See* N.T., 4/5/18, at 33. The discrepancy in the alibi notice was later used by the Commonwealth to impeach Wynn's testimony at trial with regard to the credibility of Appellant's alibi. *See* Commonwealth's Brief at 8 ("During trial, the prosecutor used the notice of alibi as a basis to cross-examine Ms. Wynn *and to effectively impeach Appellant regarding the veracity of his alibi*. []N.T.[,] 9/14/11, [at] ... 156-[]87[].") (emphasis added).

Trial counsel also admitted at the PCRA hearing that he never spoke to Crowley and, in fact, never even attempted to contact Crowley directly. N.T., 4/5/18, at 35. When asked to explain his failure to investigate, he stated:

- 10 -

> In this particular case, … I didn't know Devon Cr[o]wley. And I had never seen her before. And, however, Monique Shaw—[Appellant]'s mother knew them and she was the person—she was the point person. She was the person who knew these young ladies and who would bring them in to me for meetings. She did bring—every time I met with April W[y]nn and I met with April W[y]nn—I may have met with April W[y]nn—you know, five, six times. Okay? [S]he came in with [Monique] Shaw…. Mrs. Shaw never brought Devon Cr[o]wley in even though up to the trial—you know, I was under the impression that Mrs. Shaw was still—well, that Mrs. Shaw would make her available so I could speak with her about the alibi one and two, prep her for the jury trial that we were having. And with respect to these witnesses—these particular witnesses, Mrs. Shaw and I were in constant communications, telephone calls to one another on a consistent basis.

N.T., 4/5/18, at 35-36.

Despite never speaking to Crowley and having filed an inaccurate alibi notice, trial counsel failed to seek to amend the alibi notice prior to trial. He unsuccessfully objected to the use of the alibi notice when it was used to impeach Wynn, having entertained the belief that the content of the notice could not be used for impeachment purposes.

In Appellant's Amended PCRA petition, Attorney Molineux added a claim that trial counsel was ineffective for failing to call Crowley as an alibi witness. The PCRA granted a hearing as to that claim, but denied a hearing for the remaining claims.[5] However, after interviewing Crowley, PCRA counsel determined that he was unable to proceed on that specific issue. *See id.* at 4-5. Instead, at the PCRA hearing, Attorney Molineux sought to orally amend the PCRA petition to add a related issue: whether trial counsel was ineffective

---

[5] Including the first two claims addressed in this opinion.

for failing to amend the alibi notice prior to trial. *Id.* at 5-6. The PCRA court permitted Attorney Molineux to proceed at the hearing with that claim. *Id.* at 8. Following the hearing, the PCRA court denied the petition, and Appellant timely appealed that decision.

However, in Appellant's 1925(b) statement, Attorney Molineux abandoned the only claim he had presented at the PCRA hearing. Subsequently, Attorney Molineux withdrew his appearance, and Appellant hired present appellate counsel. Appellant now contends that Attorney Molineux was ineffective for failing to preserve the claim that trial counsel was ineffective for failing to amend the alibi notice prior to trial. This constitutes a layered ineffectiveness claim. We will address each layer in turn; however, first we must address the Commonwealth's argument that this derivative claim concerning Attorney Molineux's ineffectiveness has been waived.

In its brief, the Commonwealth asserts that Appellant waived the claim regarding Attorney Molineux's ineffectiveness, or that it is otherwise unreviewable, because it has been raised for the first time on appeal. *See* Commonwealth's Brief at 28-29 (citing *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*) ("Claims of PCRA counsel's ineffectiveness may not be raised for the first time on appeal.")). We disagree, as we find *Henkel* and the various authorities discussed therein distinguishable from the circumstances of this case. Here, Attorney Molineux's alleged ineffectiveness did not occur during the PCRA proceedings, or in his capacity as PCRA counsel. Instead, the alleged ineffectiveness occurred after the PCRA court lost

jurisdiction over this case; that is to say, Attorney Molineux's alleged ineffectiveness occurred during appellate proceedings, not in the PCRA court.

Here, Appellant presented the underlying claim of trial counsel's ineffectiveness in an oral amendment to the petition at the PCRA hearing, as discussed above. By denying the petition on April 25, 2018, the PCRA court effectively ruled on the merits of that claim. Appellant filed a timely notice of appeal on May 15, 2018. Appellant then filed his Rule 1925(b) statement on June 14, 2018. It is on that date that Appellant alleges Attorney Molineux provided ineffective assistance. As such, Appellant had no opportunity to raise that claim before the PCRA court, practically or theoretically, as the alleged ineffectiveness did not occur until after the PCRA court was deprived of jurisdiction to modify or otherwise rescind its order denying relief. **See** 42 Pa.C.S. § 5505.

In all the cases discussed in **Henkel**, the alleged ineffectiveness of PCRA counsel occurred before this Court assumed jurisdiction or could assume jurisdiction. Although Attorney Molineux was responsible for the alleged ineffectiveness in the filing of the 1925(b) statement, it is perhaps somewhat of a misnomer to refer to him as 'PCRA counsel' at all within the context of **Henkel**. When the 1925(b) statement was filed, the PCRA proceedings had ended and the PCRA court no longer had jurisdiction. Attorney Molineux, at

that time, was acting as appellate counsel, not PCRA counsel, even though he had previously served as Appellant's PCRA counsel.[6]

Because this claim concerning Attorney Molineux's alleged ineffectiveness does not fall under the purview of **Henkel**, and because Appellant raised it at the earliest possible opportunity, the issue has not been waived. Thus, we now will consider the merits of each layer of Appellant's layered ineffectiveness claim.

### Attorney Molineux's ineffectiveness

*Arguable Merit*

The arguable merit prong of the claim concerning Attorney Molineux's alleged ineffectiveness is established by the merit of the underlying ineffectiveness claim concerning trial counsel's alleged ineffectiveness, as discussed below. If trial counsel was ineffective for failing to amend the alibi notice prior to trial, then there is arguable merit to the claim that PCRA counsel was ineffective for failing to preserve that claim.

*Reasonable Basis*

Given that Attorney Molineux amended the PCRA petition to include the underlying claim of trial counsel's ineffectiveness, and because he litigated *only* that specific claim during the PCRA hearing, we cannot ascertain any

---

[6] This is analogous to when a defendant's trial counsel continues his representation in the appeal from the defendant's conviction. After the filing of a timely notice of appeal, it would be a misnomer to describe that attorney as 'trial counsel' when both his role and the forum for adjudication have fundamentally changed. Similarly, here, after the filing of the notice of appeal, Attorney Molineux ceased being 'PCRA counsel' within the meaning of **Henkel**.

reasonable basis upon which he subsequently abandoned that claim by omitting it from Appellant's 1925(b) statement. This is undeniably true if, in fact, the underlying claim was potentially meritorious. Moreover, nothing that occurred during the course of the PCRA hearing demonstrated a reason to abandon the claim for any purpose, strategic or otherwise. Accordingly, we conclude that PCRA counsel could have had no reasonable basis to abandon the claim of trial counsel's ineffectiveness when he filed the Rule 1925(b) statement on Appellant's behalf.

*Prejudice*

Here, the prejudice that ensued is obvious: Attorney Molineux's omission of the claim of trial counsel's ineffectiveness in Appellant's 1925(b) statement caused the waiver of that claim on the appeal from the denial of his PCRA petition. Thus, the only remaining question is whether the underlying claim of trial counsel's ineffectiveness has merit.

### **Trial counsel ineffectiveness**

*Arguable Merit*

Trial counsel's own testimony at the PCRA hearing established that he filed an alibi notice that did not reflect the information he had received from Appellant and Appellant's mother. The notice indicated that Appellant was with both Crowley and Wynn at the time of the offense, whereas trial counsel was told that Appellant was with Crowley first, and then with Wynn at a later time that day. In any event, by the time the trial started, trial counsel had not spoken to Crowley at all, and there is no indication in the record that Wynn

ever told trial counsel that she was with Appellant and Crowley at the same time, or even how trial counsel came to that conclusion. Yet, trial counsel failed to amend the alibi notice to reflect the actual nature of Appellant's alibi claim and that Crowley was not willing to provide an alibi. Thus, we agree with Appellant that this claim has arguable merit.

*Reasonable Basis*

We fail to ascertain any reasonable basis for trial counsel's inaction in this regard. At the PCRA hearing, trial counsel suggested that, in his view, the content of the alibi notice could not be used for impeachment purposes, and that reasonable legal minds could disagree on that point. **See** N.T., 4/5/18, 57-58. This suggests the admissibility of alibi notice for impeachment purposes was an open question at the time of Appellant's trial and, thus, that trial counsel's failure to amend the alibi notice was a reasonable strategy, because it ostensibly could not be used to impeach the sole alibi witness he presented at Appellant's trial. However, that issue was not an open question. Contrary to trial counsel's legal analysis, it is *well-established* that an alibi notice can be used for impeachment purposes.

In **Commonwealth v. Thomas**, 575 A.2d 921 (Pa. Super. 1990), the defendant was charged with the robbery of a convenience store. Although he wore a mask, a store employee picked him out of a photo array. Prior to trial, the defendant "filed a notice of alibi defense in which he listed three alibi witnesses whom he intended to call at trial. When these witnesses were not called, the Commonwealth was permitted to cross-examine [him] regarding

his alibi defense and to introduce in rebuttal his notice of alibi." *Id.* at 923. In *Thomas*, we upheld the trial court's decision because "at no time prior to trial … did [the defendant] attempt to withdraw or amend his notice of alibi defense." *Id.* at 924 (concluding that "[u]nder these circumstances, we perceive no error in the trial court's allowing [the] appellant to be impeached by his notice of alibi defense"). Indeed, Pennsylvania's Rules of Criminal Procedure provide that "if the defendant has filed notice and testifies concerning his or her presence at the time of the offense at a place or time different from that specified in the notice, the defendant may be cross-examined concerning such notice." Pa.R.Crim.P. 567(G).

Furthermore, it is of no moment that, in the present case, the Commonwealth used the alibi notice to impeach Appellant's alibi witness, Wynn, rather than Appellant (who did not testify). In *Commonwealth v. Hill*, 549 A.2d 199 (Pa. Super. 1988), we held that "the fact that the Commonwealth presented rebuttal testimony, rather than cross-examining [the] appellant, to impeach [his] testimony is of no consequence. It is well settled that evidence is admissible in rebuttal to contradict that offered by a defendant *or his witnesses*[.]" *Id.* at 202 (cleaned up; emphasis added).

Our Supreme Court has also held that when an alibi notice is withdrawn prior to trial, it cannot be subsequently used as evidence of the defendant's untruthfulness. In *Commonwealth v. Alicea*, 449 A.2d 1381 (Pa. 1982), the defendant filed an alibi notice, but withdrew it a day before trial, at which he instead argued self-defense. At sentencing, the trial court indicated that it

- 17 -

was imposing a harsher sentence because the defendant had lied by giving a false alibi notice. Our Supreme Court rejected the trial court's reasoning, holding that "although a sentencing court, where it has observed false testimony as to a material fact at trial, may consider the defendant's perjury as one factor in imposing an appropriate sentence, it may not so consider an abandoned, albeit fabricated, notice of alibi defense." *Id.* at 1384. Thus, given these authorities, we conclude that trial counsel's belief that the alibi notice could not be used to impeach Wynn was unreasonable in light of existing case law and Pennsylvania's Rules of Criminal Procedure.

Trial counsel also suggested that he did not amend the alibi notice prior to trial because he hoped that Crowley would eventually show up to testify on Appellant's behalf. This was also not a reasonable basis to justify his failure to amend the alibi notice. Trial counsel's reliance on Appellant's mother to communicate with Crowley, one of the only witnesses he intended to call to testify at trial, was not reasonable. At least, it was not reasonable to continue to rely on Appellant's mother for that purpose as the trial approached and counsel still had not spoken with Crowley. Trial counsel made no attempts to contact Crowley beyond his reliance on Appellant's mother. In any event, trial counsel testified that, long before the trial occurred, he was aware that the content of the alibi notice was inaccurate in that it stated that Appellant was with Crowley and Wynn at the same time. N.T., 4/5/18, 55-56. When asked why he did not amend the alibi notice based on that knowledge, trial counsel answered that he did not do so because, essentially, he did not believe the

content of the alibi notice could be used to impeach his witnesses. *Id.* at 56-57. As noted above, that belief was incorrect as a matter of law. Consequently, for the aforementioned reasons, we ascertain no reasonable basis for trial counsel's failure to amend the alibi notice.

*Prejudice*

Finally, we must determine whether counsel's failure to amend the alibi notice prejudiced Appellant to the extent "that there is a reasonable probability that the result of the proceeding would have been different absent such error." *Dennis*, 17 A.3d at 301. The primary issue in this case was one of identity and, therefore, Victim's identification of Appellant was essential to the conviction. As noted above with regard to Appellant's first two ineffectiveness claims, there was at least some evidence that Victim's identification was not credible, even though it was admissible. There was no physical evidence presented at trial that tended to corroborate the identification. Furthermore, the record does not establish that any other witnesses were able to identify Appellant.[7] Wynn's alibi testimony indicated

_____

[7] In the trial court's summary of the facts adduced at trial, reproduced in the PCRA court's opinion, the court stated:

> In addition to [Victim], a neighbor who lived two doors from [Victim] testified that he had seen [Appellant] and Vincent in front of the house earlier and that he had warned others to lock their doors. A guest of [Victim]'s also lived nearby. He saw two strangers outside the house. He asked them to leave and locked the door. A female guest saw Vincent enter the apartment and punch [Victim] before she ran to the bathroom to hide. After the

that she was with Appellant in Philadelphia from 5:30 p.m. onward on the date in question. The Commonwealth's witnesses indicated that Victim was assaulted at some point after 7:00 p.m. in Darby Borough.[8] Thus, if believed by the jury, Wynn's testimony might have produced a reasonable doubt in a juror's mind as to whether Appellant was the perpetrator of the crime against Victim, as it was not possible for him to be in Philadelphia and in Darby Borough at the same time. Accordingly, we conclude that Appellant was prejudiced by trial counsel's failure to amend the alibi notice prior to trial, as that alibi notice was then used to impeach Appellant's only alibi witness. Indeed, this was particularly prejudicial where, here, the inaccuracies in the

---

> incident when he was being treated for his injuries, [Victim] identified both [Appellant] and Vincent in separate photo arrays that he viewed on different days.

TCO at 3. This may suggest that other witnesses identified Appellant and his co-defendant, but that was not the case. While these witnesses testified that they had observed two individuals' lurking around the apartment complex prior to the assault, and one witness described the men who entered Victim's apartment, none of these witnesses specifically identified Appellant as one of the men that they had observed.

[8] **See** N.T., 9/13/11, at 75 (Victim testifying he arrived at his apartment around 7:00 p.m., prior to the shooting); *id.* at 303 (Bobatuna Oke, who was inside Victim's apartment at the time of the shooting, testifying that he arrived in Darby between 5:30 p.m. and 6:00 p.m.); *id.* at 306 (Mr. Oke testifying that after he arrived at Victim's apartment sometime later, they ordered Chinese food); *id.* at 307 (Mr. Oke testifying that the shooting occurred approximately 45 minutes after they placed the order); *id.* at 330 (Tanisha Garraway, who was also inside Victim's apartment at the time of the shooting, testifying that Victim arrived at the apartment at 7:00 p.m. with, among others, Mr. Oke); *id.* at 336 (Ms. Garraway testifying that, after they ordered Chinese food, she engaged in conversation with people present, and that the shooting occurred approximately ten minutes after that conversation).

alibi notice were solely the fault of trial counsel, whereas Appellant had never informed counsel that he was with both Wynn and Crowley at the same time and, even if he had, counsel was aware that version of events was inaccurate long before trial.

As we have determined that Appellant's underlying claim of trial counsel's ineffectiveness is meritorious, his claim concerning PCRA counsel's ineffectiveness for abandoning this claim in Appellant's 1925(b) statement has arguable merit. Moreover, as discussed above, PCRA counsel lacked a reasonable basis for omitting the claim of trial counsel's ineffectiveness, and Appellant was prejudiced by that omission. Accordingly, Appellant is entitled to relief in the form of a new trial.

Order **reversed**. Judgment of Sentence **vacated**. Case **remanded** for a new trial. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/3/19

- 21 -