[J-135-2016] [MO: Wecht, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 713 CAP |
| | : | |
| Appellant | : | Appeal from the Order of the Court of |
| | : | Common Pleas, Berks County, Criminal |
| | : | Division dated July 6, 2015 at No. CP- |
| v. | : | 06-CR-0000118-1997, directing that a |
| | : | new trial be held. |
| | : | |
| RODERICK ANDRE JOHNSON, | : | SUBMITTED:  December 2, 2016 |
| | : | |
| Appellee | : | |

**DISSENTING OPINION**

**JUSTICE MUNDY**                                    **DECIDED:  December 19, 2017**

Because I would conclude the five undisclosed police reports are not material under *Brady v. Maryland*, 373 U.S. 83 (1963), I dissent.  I disagree with the Majority's conclusion that if trial counsel had been able to suggest to the jury Robles was motivated by bias to provide evidence to the police, "there is a reasonable probability that Johnson would not have been convicted of first-degree murder."  Majority Opinion, slip op. at 14.  Instead, I would conclude that the suppression of the police reports, when considered in the context of all the evidence presented at trial, does not undermine confidence in the outcome of Johnson's trial.  Accordingly, I would hold that the PCRA court's decision to award Johnson a new trial is not supported by the record.

As the Majority states, to establish a *Brady* violation, the defendant must prove that: (1) the Commonwealth suppressed the evidence, either intentionally or unintentionally; (2) the evidence was favorable to the defendant in that it was exculpatory or useful for impeachment; and (3) the evidence was material such that

prejudice ensued. *Commonwealth v. Champney*, 65 A.3d 386, 397 (Pa. 2013) (citation omitted). Further, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The Majority emphasizes that the police reports would have exposed Robles' self-interest and "cast doubt upon the veracity of Robles' testimony" by showing: "Robles' motive to cooperate with the police in order to discern the status of investigations into his own crimes," Majority Opinion, slip op. at 12; "instances where Robles had lied or deceived the police," *id.*; "Robles had a motive to eliminate rival drug dealers," *id.*; "Robles had an ulterior motive in testifying for the prosecution," *id.*; "Robles admitted that he was . . . a drug dealer," *id.*; and "Robles' motive to lie to further the ongoing collaboration between himself and the Reading Police Department," *id.* The Majority evaluates the cumulative effect of the suppressed evidence in isolation from the other evidence tending to corroborate Robles' statement inculpating Johnson and from the other evidence of Johnson's guilt. The Majority's analysis falls short because "a reviewing court is not to review the undisclosed evidence in isolation, but, rather, the omission is to be evaluated in the context of the entire record." *Commonwealth v. Dennis*, 17 A.3d 297, 309 (Pa. 2011).

Viewing the suppressed evidence in light of the totality of the evidence, I would conclude there is no reasonable probability that the result of the proceeding would have been different. Ultimately, Robles' motive to testify is probative of the truthfulness of his testimony. However, a witness may be predisposed to provide the police with information, yet still provide accurate information. In this case, the evidence corroborating Robles' statement tends to confirm the truthfulness of his statement. On

December 17, 1996, Robles gave the statement in which he averred that Johnson had told him he was carrying a .38-caliber revolver on the night of the Banks cousins' murders. According to Robles, Johnson also told Robles that he wiped the revolver clean and discarded it on the side of the road. The next day, December 18, 1996, police found a .38-caliber revolver approximately a quarter of a mile from the crime scene, eight to twelve feet from the side of the road. Additionally, a .38-caliber bullet was recovered from Damon Banks' body. Moreover, in Johnson's statements to police, he mentioned that Bridges took a 9-millimeter handgun and a shotgun with him when they went to find the Banks cousins; Johnson never claimed that Bridges had a .38-caliber gun. Accordingly, I would conclude that the *Brady* evidence was not material because the totality of the evidence tended to corroborate Robles' statement. Evidence of Robles' bias does not undermine confidence in the outcome of Johnson's trial.

Even discounting Robles' testimony, the totality of the remaining evidence also supports the verdict. On December 11, 1996, Johnson confessed in a written, signed statement to driving with Bridges and Morales to pick up the Banks cousins, then driving them to a remote location, knowing that Bridges intended to kill the Banks cousins. At trial, Detective Albert Schade testified that he conducted an oral follow-up interview of Johnson on December 11, 1996, during which Johnson stated that "they"—meaning Johnson, Bridges, and Morales—planned on shooting the Banks cousins and went to the Banks' residence with the intent to murder them. N.T., Trial, 11/21/97, at 677.

Johnson's version of events—that he was not a shooter and that Bridges shot him first, causing Johnson to flee—was contradicted by his confession and by the other evidence. Johnson's claim that Bridges shot him before he shot the Banks cousins was inconsistent with the evidence that Johnson was shot with a .32-caliber handgun, which was the caliber of handgun that Damon Banks was carrying the day of the shootings,

according to the testimony of Damon's friend. N.T., Trial, 11/20/97, at 474-75. Moreover, Johnson's version of the events does not exculpate him because, by his own admission, he participated in the planning of the murders and drove the van with the intent to kill the Banks cousins. Based on this evidence of Johnson's guilt, I would conclude Robles' bias was not determinative, and there is no reasonable probability that the result of Johnson's trial would have been different. Accordingly, I would reverse the PCRA court's decision to award Johnson a new trial because it is not supported by the record. *See Champney*, 65 A.2d at 396.