**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEPHANIE ANGELETTE DUNCAN | : | |
| | : | |
| Appellant | : | No. 909 MDA 2025 |

Appeal from the PCRA Order Entered April 30, 2025
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000240-2021

BEFORE:  DUBOW, J., BECK, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: APRIL 15, 2026**

Stephanie Angelette Duncan ("Duncan") appeals from the order dismissing her first petition filed pursuant to the Post Conviction Relief Act.[1] Additionally, Duncan's court-appointed counsel, John J. Ferry, Esquire ("Attorney Ferry"), has filed a motion to withdraw from representation and a "no-merit" letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  We grant Attorney Ferry's motion and affirm the PCRA court's order dismissing the petition.

In 2021, police arrested Duncan and her husband after an investigation revealed that they had, on multiple occasions, abused their five adopted children, A.D., T.D., L.D., J.D., and B.D., whose ages ranged from six to fifteen

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

at the time. The abuse came to light following eleven-year-old L.D.'s emergency admission to the pediatric intensive care unit of Penn State Health Milton S. Hershey Medical Center as a result of severe hypothermia. It was while administering life-saving treatment for this condition that physicians first noticed symptoms of child abuse (which included bruising to L.D.'s neck, shoulders, back, abdomen, hip, and genitals), and reported it to police.

The record reflects that, for several years, Duncan controlled virtually every aspect of her children's lives, policing their actions either in-person or via cameras she had installed throughout the home. Duncan's three eldest children slept in separate rooms located within the home's basement, each internally monitored by a separate video feed. While Duncan did not sequester the two youngest children to the basement, she monitored them all the same. Duncan imposed numerous restrictions on the children's lives, ranging from those which were seemingly less concerning, such as whether they could watch television or engage in certain school activities, to those far more totalitarian, such as whether they had permission to eat, drink, sleep, or leave their bedroom to use the restroom.

The punishment for noncompliance with Duncan's commands was generally severe. Where each of the children reported Duncan and her husband either beating, choking, or throwing them, some of the children additionally reported that Duncan: restricted them from eating or drinking for days at a time; force-fed them spicy serrano peppers (or their vomit

containing said peppers if they could not keep them down); removed the furniture from their bedroom and forced them to sleep naked on a cold concrete floor; confined them to an empty bedroom to the extent they could not use the restroom and would instead have to urinate on the floor; forced them to clean up their urination with bleach (then poured bleach on their heads if they were to complain about the fumes); and made them do various physical exercises, such as jogging in place for seemingly hours on end. We emphasize that this is by no means an exhaustive list of the forms of abuse suffered by the children while in Duncan's care.

Following her arrest, the Commonwealth charged Duncan with thirty-five offenses, including multiple counts of aggravated assault, simple assault, strangulation, and endangering the welfare of children.[2] On October 20, 2021, Duncan entered an open guilty plea to all of these charges. After verbally confirming Duncan's understanding of the open guilty plea process, such that the court was certain that she was entering the plea knowingly, intelligently, and voluntarily, the trial court accepted her guilty plea and deferred sentencing pending the preparation of a presentence investigation report.[3]

---

[2] The Commonwealth also charged Duncan's husband with numerous offenses. The record reflects that, at some point thereafter, Duncan and her husband divorced. Thus, we will refer to him hereinafter as her ex-husband.

[3] In addition to the oral guilty plea colloquy conducted by the trial court at the plea hearing, Duncan additionally completed and signed a written guilty plea
*(Footnote Continued Next Page)*

On December 22, 2021, the parties convened for sentencing, whereupon the trial court imposed an aggregate sentence of seventeen to forty-seven years' imprisonment. Duncan did not raise any objections with respect to this sentence, nor did she file a post-sentence motion. Similarly, Duncan did not file an appeal from her judgment of sentence.

On December 20, 2022, Duncan filed the underlying timely,[4] *pro se* PCRA petition raising, *inter alia*, multiple claims challenging the effectiveness of her plea counsel, Timothy Engler, Esquire ("Attorney Engler"), and the corresponding validity of her guilty plea. Relevantly, with respect to her ineffectiveness claims, Duncan alleged that Attorney Engler failed to procure for her a psychological evaluation, which she claimed would have shown she suffered from Battered Woman Syndrome ("BWS") at the time she was caring for her children, and would have constituted a mitigating circumstance for sentencing purposes. After determining that an evidentiary hearing was

_____

colloquy, further confirming her understanding of the open guilty plea process and its consequences. **See** Written Guilty Plea Colloquy, 10/20/21.

[4] Under the PCRA, a petition must be filed within one year of the date the judgment of sentence becomes final. **See** 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final at the conclusion of direct review, including discretionary review in the Pennsylvania Supreme Court, or the expiration of time for seeking appellate review. **See** 42 Pa.C.S.A. § 9545(b)(3). Here, because Duncan did not seek review with this Court, her judgment of sentence became final thirty days later, on January 21, 2022. **See** Pa.R.A.P. 903(a) (generally providing a party with thirty days in which to file a notice of appeal). Thus, Duncan had one year from this date, until January 21, 2023, to file a timely petition. As Duncan filed the instant petition on December 20, 2022, it is timely.

- 4 -

necessary to resolve Duncan's issues, the PCRA court issued an order directing Duncan's PCRA counsel to file a statement outlining, *inter alia*, "the specific allegations of ineffectiveness against" Attorney Engler. Order, 1/26/23, at unnumbered 1. The PCRA court then appointed Attorney Ferry as PCRA counsel, who filed the above-requested statement.[5] As a result of this counseled supplemental PCRA filing, the PCRA court generally limited the evidentiary hearing to the ineffectiveness issues raised in the statement.

At the evidentiary hearing, the PCRA court initially heard testimony from Duncan's expert on the subject of BWS and its potential application to Duncan as a mitigating circumstance to her commission of the underlying crimes. Duncan's expert concluded that "as a result of [his review of a] multitude of [Duncan's] tests, . . . records[,] and current psychiatric testing and evaluation, [he believed her] symptoms were consistent with post[-]traumatic stress disorder and [being a] victim of" BWS. N.T., 9/30/24, at 18.

The court then heard testimony from Duncan, who testified as follows:

> [Attorney Ferry]: . . . . Did you discuss [with Attorney Engler] the possibility of getting a psychological evaluation for use at sentencing?

---

[5] This counseled statement limited Duncan's ineffectiveness claims to Attorney Engler's failure to: (1) "present mitigating evidence of [BWS] at sentencing[;]" and (2) "pursue [Duncan's] request that she have a psychological evaluation [which] would have shown that [she] was not mentally capable of making a knowing, voluntary, and intelligent decision of entering into a guilty plea at that time due to [BWS] and the undue influence of her abuser." Statement of Specific Allegations of Ineffective Assistance of Counsel in Support of PCRA, 2/23/23, at 1.

[Duncan]: I asked him for one. I explained the county spike team at the jail suggested one. And he told me that he used up all of our like extensions. I don't know if that's the right word. But that he couldn't extend . . . trial any more[.] . . . And[,] so he told me that my mom was free to look in[]to it, but that . . . had to all . . . be done . . . in that amount of . . . time[.] So[,] I called my mom and I told her. I don't know if she called [Attorney] Engler or [if Attorney] Engler called my mom to discuss [the matter,] but my mom was trying to call around and get somebody . . . to see me in that time period. But [Attorney] Engler didn't. He said if we want to do it[,] my mom would have to do it.

*Id*. at 46-47.

Following Duncan's testimony, the court heard from the Commonwealth's expert on BWS, who opined that Duncan was not suffering from BWS while caring for her children, and that even if she were, it would generally not "present itself at all [as] child abuse." N.T., 3/24/25, at 26.[6] The Commonwealth's expert emphasized that: (1) she had never "read [nor] seen studies done where a victim of domestic violence suffering from [BWS] engaged in prolonged abuse of children[;]" and (2) even "if [Duncan] felt that she was in fear of her life from" her ex-husband's physical abuse, which the expert explained is an emblematic trait of BWS, "then he would have been her target, [and] not the children." *Id*. at 22, 26.

Duncan's ex-husband thereafter testified that he also did not believe Duncan "is a victim of domestic violence[,]" explaining that even though both

_____

[6] Due to scheduling constraints, the PCRA court conducted the hearing over two days occurring months apart, with the majority of the witnesses testifying on the second day.

he and Duncan "were physical to each other [during their relationship,] it was more mutual." ***Id***. at 52. Duncan's ex-husband clarified that these physical bouts of violence occurred "[r]arely[,]" and that because they "both studied martials arts" and were "on equal standing" in terms of self-defense, when "one of [them did happen to get] physical with the other, the other was able to respond." ***Id***.

J.D. then took the stand and provided testimony that he had never seen Duncan's ex-husband "become physical with" Duncan, and that the dynamic between her and her ex-husband instead suggested that she was the aggressor in their relationship, as she was "like super dominant basically [and] like just bossing him around I guess and he [would] just listen[]." ***Id***. at 62.

Attorney Engler thereafter testified with respect to his decision not to pursue a psychological evaluation for Duncan, as follows:

Q. [While representing Duncan, d]id you have ongoing discussions with [her] about her case?

A. We did.

\* \* \* \*

Q. Now one of the issues in [Duncan's] PCRA deals with competency[. D]id you ever feel that she was incompetent during your representation of her to proceed before the court?

A. No. She is college educated. She comes off as such. She was always articulate, always asking questions and involved in our discussions. I never had anything that would have led me to believe that she was not competent.

Q. And at any point during your representation of . . . Duncan, did you contemplate getting a psychiatric evaluation of her?

- 7 -

A. I had no reason to believe that we needed a psychiatric evaluation. She talked about her abuse in the hands of her father years ago. Essentially what was in the [presentence investigation report] she had relayed to me. She had talked about depression and the meds that she was on. But no, I never reached any conclusion that we needed to do an evaluation.

Q. Did she ever tell you that she wanted you to investigate [BWS] or how her being a victim of it could be a potential defense or mitigating factor?

A. No, we never discussed that. In-fact, we never discussed her being a victim in her own home. The only time that we talked about her being a victim was at the hands of her father.

Q. So[,] she never described any type of violence or abuse at the hands of her [ex-]husband . . .?

A. No.

Q. And ultimately it was her decision, not only to plead but then proceed to sentencing and not withdraw the plea; correct?

A. That's correct.

Q. And[,] Attorney Engler, do you feel that you provided her appropriate and effective representation at all times with respect to this case?

A. I do.

*Id*. at 68, 72-73 (unnecessary capitalization omitted).

On April 30, 2025, the PCRA court entered the underlying order dismissing Duncan's PCRA petition. Duncan filed a timely *pro se* notice of

appeal,[7] and the PCRA court instructed her to file a concise statement pursuant to Pa.R.A.P. 1925(b). Attorney Ferry did not comply with the PCRA court's Rule 1925(b) order, and instead filed in the PCRA court a motion to withdraw from representation as well as a **Turner**/**Finley** "no-merit" letter. In response, the PCRA court denied Attorney Ferry's motion and ordered him to continue representing Duncan in connection with this appeal. Attorney Ferry then filed a duplicative and untimely notice of appeal from the order dismissing Duncan's PCRA petition. Once again, the PCRA court ordered Duncan to file a Rule 1925(b) concise statement.[8]

_____

[7] At the time Duncan filed the *pro se* notice of appeal, she was represented by counsel, and therefore generally precluded from making *pro se* filings. **See Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016) (explaining that hybrid representation is not permitted to the extent that *pro se* motions filed "while an appellant is represented by counsel [are] legal nullities" having no legal effect). However, "because a notice of appeal protects a constitutional right, it is distinguishable from other filings that require counsel to provide legal knowledge and strategy." **Id**. Thus, Duncan was permitted to file the *pro se* notice of appeal. **See id**.

[8] Ordinarily, Attorney Ferry's failure to timely file a court-ordered Rule 1925(b) concise statement would constitute *per se* ineffectiveness. **See** Pa.R.A.P. 1925, Note; **see also Commonwealth v. Burton**, 973 A.2d 428, 432-33 (Pa. Super. 2009) (explaining that, in response to a court's Rule 1925(b) order, "untimely filing is *per se* ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal"). However, because the PCRA court's second Rule 1925(b) order effectively provided Attorney Ferry with an extension of time in which to file a concise statement, his timely compliance with the second order avoided any finding of *per* se ineffectiveness. **See** Pa.R.A.P. 1925(c)(3) (generally stating that if counsel fails to timely file a concise statement, this Court may remand if it is convinced "that counsel has been *per se* ineffective").

Attorney Ferry thereafter filed a concise statement in which he raised three discrete issues. In this Court, Attorney Ferry has filed a motion to withdraw and a **Turner**/**Finley** "no-merit" letter. Before we may address the issues identified in Attorney Ferry's "no-merit" letter, we must first address his motion to withdraw. Pursuant to **Turner**/**Finley**, independent review of the record by competent counsel is required before withdrawal on collateral appeal is permitted. **See Commonwealth v. Pitts**, 981 A.2d 875, 876 n.1 (Pa. 2009). In **Pitts**, our Supreme Court explained that such independent review requires proof of:

1. A "no-merit" letter by PC[R]A counsel detailing the nature and extent of [counsel's] review;

2. The "no-merit" letter by PC[R]A counsel listing each issue the petitioner wished to have reviewed;

3. The PC[R]A counsel's "explanation," in the "no-merit" letter, of why the petitioner's issues were meritless;

4. The PC[R]A court conducting its own independent review of the record; and

5. The PC[R]A court agreeing with counsel that the petition was meritless.

**Id**. (citation and brackets omitted). Further, counsel must also send a copy of the "no-merit" letter to the petitioner, along with a copy of the motion to withdraw, and inform the petitioner of the right to proceed *pro se* or to retain new counsel. **See Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa. Super. 2007). Substantial compliance with the requirements to withdraw as counsel will satisfy the **Turner**/**Finley** criteria. **See Commonwealth v.**

*Karanicolas*, 836 A.2d 940, 947 (Pa. Super. 2003). If the "no-merit" letter meets these requirements, we then conduct an independent review of the petitioner's issues. *See Commonwealth v. Muzzy*, 141 A.3d 509, 511 (Pa. Super. 2016).

Our review discloses that Attorney Ferry has substantially complied with the above requirements. In his motion, Attorney Ferry detailed the nature and extent of his review of Duncan's case, listed the issues that she wished to have reviewed, and, albeit very briefly, explained his reasoning for concluding that her issues were meritless. Additionally, Attorney Ferry provided Duncan with a letter notifying her of his intention to seek permission to withdraw from representation, as well as a copy of the *Turner*/*Finley* "no-merit" letter, and he advised her of her rights in lieu of representation. Thus, we conclude that Attorney Ferry has substantially complied with the requirements necessary to withdraw as counsel. *See Karanicolas*, 836 A.2d at 947.

We now independently review the issues that Duncan wished to raise on appeal to determine whether she is entitled to any relief. In the "no-merit" letter, Attorney Ferry framed these issues as follows:

1. Whether investigators improperly talked to the children without Duncan's permission;

2. Whether evidence was improperly obtained without a search warrant when Children and Youth Services employees entered Duncan's home;

3. Whether the trial court improperly failed to consider the fact that Duncan was the person who called 911;

4. Whether Duncan's [ex-]husband was improperly permitted to collude with one of the children during the PCRA hearing;

5. Whether the trial court improperly failed to identify aggravated factors;

6. Whether trial counsel failed to fully discuss with Duncan her right to file an appeal;

7. Whether trial counsel failed to inquire as to Duncan's background as well as the facts at issue;

8. Whether there was an improper conflict of interest in that Attorney Engler was selected and paid by Duncan's co-defendant [ex-]husband[;]

9. Whether trial counsel "was not on my side and did not say anything to help me at all" at sentencing;

10. Whether trial counsel improperly failed to investigate mitigating evidence to present at sentencing[.]

"No-Merit" Letter, 10/26/25, at 25-27 (issues reordered).

Preliminarily, we must determine whether each of the issues raised in the "no-merit" letter were preserved for appellate review. When a court orders the appellant to file a concise statement pursuant to Rule 1925(b), any issues not raised in the concise statement are waived. *See* Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the [concise s]tatement . . . are waived"); *see also Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (holding that "[a]ny issues not raised in a 1925(b) statement will be deemed waived"). Further, it is well-settled that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also Commonwealth v. Reid*, 259 A.3d

- 12 -

395, 413-14 (Pa. 2021) (concluding that the PCRA petitioner waived his ineffectiveness claim by failing to include it in his PCRA petition).

As explained above, Attorney Ferry listed only three issues in the concise statement he filed on Duncan's behalf. Of those three issues, only two are among the ten issues listed in the "no-merit" letter — issues nine and ten. Consequently, because Duncan did not include the first eight issues listed in the "no-merit" letter within her concise statement, she failed to preserve them for our review. **See** Pa.R.A.P. 1925(b)(4)(vii); **see also Lord**, 719 A.2d at 309.

Moreover, although Duncan's ninth issue, wherein she claims that Attorney Engler did not advocate on her behalf at sentencing, was included in the concise statement, it was not preserved for our review in the PCRA court. Indeed, we are unable to locate any reference to this ineffectiveness claim in the amended statement that the PCRA court ordered Attorney Ferry to file on Duncan's behalf, in preparation for the evidentiary hearing. **See** Statement of Specific Allegations of Ineffective Assistance of Counsel in Support of PCRA.[9]

_____

[9] This supplemental PCRA filing was effectively a counseled amendment to Duncan's *pro se* petition. Thus, to the extent that it presented the PCRA court with a condensed list of issues for its review, the court could only consider the counseled issues raised therein. **See Commonwealth v. Pursell**, 724 A.2d 293, 301 (Pa. 1999) (holding, based upon principles discouraging hybrid representation, that only issues presented in a counseled amended PCRA petition shall be addressed by the PCRA court). As a result, it is of no consequence that Duncan originally raised her ninth issue in her *pro se* petition, as the counseled supplemental filing ultimately rendered the issue
*(Footnote Continued Next Page)*

Thus, this issue is also waived. *See* Pa.R.A.P. 302(a); *see also Reid*, 259 A.3d at 413-14.

As the first nine issues presented in the "no-merit" letter are waived, we limit our appellate review to Duncan's tenth issue. Our standard of review of an order dismissing a PCRA petition is well-settled:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Further, when a PCRA court grants an evidentiary hearing on a petition, its "credibility findings are to be accorded great deference[, to the extent that] where the record supports the PCRA court's determinations, [they] are binding

---

waived. *See Commonwealth v. Johnson*, 179 A.3d 1153, 1157 (Pa. Super. 2018) (stating that where counsel files an amended PCRA petition, a petitioner's "*pro se* claims [can]not be merely incorporated, and, in turn, are waived on appeal"). Moreover, we observe that even if Duncan had preserved this claim, it is patently without merit, as the sentencing hearing transcript clearly reflects that Attorney Engler diligently advocated on Duncan's behalf by imploring the court to exercise leniency when calculating her sentence. *See* N.T., 12/22/21, at 5-7.

- 14 -

on a reviewing court." ***Commonwealth v. Dennis***, 17 A.3d 297, 305 (Pa. 2011). This deference is especially applicable where, as here, "the PCRA court judge also served as the trial court judge." ***Commonwealth v. Martin***, 5 A.3d 177, 199 (Pa. 2010).

Duncan's tenth issue concerns whether Attorney Engler rendered ineffective assistance by failing to investigate mitigating evidence for sentencing purposes. In assessing a claim of ineffective assistance under the PCRA, we presume that counsel has rendered effective assistance. ***See Reid***, 259 A.3d at 405 (Pa. 2021). To overcome this presumption, the petitioner must show that:

> (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different.

***Id***. (citation and quotation marks omitted). The petitioner must satisfy all three prongs of this test to obtain relief under the PCRA. ***See id***. Accordingly, the failure to satisfy any one of these prongs will result in the rejection of the petitioner's ineffectiveness claim. ***See id***.

As best we can gather from Attorney Ferry's "no-merit" letter, Duncan claims that Attorney Engler was ineffective for failing to: (1) order her a psychological evaluation prior to sentencing; and (2) present its results at the sentencing hearing as mitigating evidence. Duncan maintains such an evaluation would have revealed she suffered from BWS at the time she abused

her children. In support, Duncan relies on the testimony of her expert at the evidentiary hearing, who "concluded that [she] was the victim of post[-]traumatic stress disorder and had symptoms consistent with elements of" BWS. "No-Merit" Letter, 10/26/25, at 20.

The PCRA court determined that Duncan's ineffectiveness claim was without merit. In doing so, the court relied on the same analysis that it used to initially dismiss Duncan's petition, as follows:

> [Duncan] claims Attorney Engler failed his duties as counsel to her by not pursuing a [BWS] defense or a psychological evaluation of [her]. . . ..
>
> * * * *
>
> Attorney Engler chose not to pursue a BWS defense. BWS was never discussed between himself and [Duncan]. [Duncan] never told Attorney Engler she was a victim of abuse by her [ex-]husband, raising a potential BWS defense. [Duncan] also swore to have discussed any defenses associated with her case at her guilty plea:
>
> > The Court: Have you and your lawyer discussed the elements of the charges, the facts needed to prove these elements, and any defenses that you might have, . . . Duncan?
> >
> > [Duncan]: Yes, Your Honor.
>
> The BWS defense in this case does not have arguable merit. Although [Duncan's expert] diagnosed [her] with BWS[, Duncan] never discussed with Attorney Engler the idea of a BWS defense nor her alleged abuse by her [ex-]husband. In addition, [Duncan] never filed a [protection from abuse] against her [ex-]husband while the purported abuse was occurring. In addition, none of the children described abuse by [Duncan's ex-husband] directed at [her]. Moreover, . . . Duncan['s ex-husband] testified credibly at the PCRA hearing that he did not abuse his wife or force her to abuse the children.

> We will not find Attorney Engler ineffective for failing to pursue a BWS defense at trial. Based upon everything known to Attorney Engler, there would have been no reason for him to request a psychological evaluation or [pursue] a BWS theory. Even had he done so, the results would not have been likely to succeed given the nature and duration of [Duncan's] abusive conduct, the testimony of the children[,] and her utter lack of any complaint during the applicable time period. We therefore reject [Duncan's] BWS-related arguments.

PCRA Court Opinion, 4/30/26, at 13, 16-17 (citations omitted).

Based on our review, we conclude that the PCRA court's determination that Duncan's ineffectiveness claim is without merit is supported by the record and without legal error. In doing so, we reiterate that for Duncan to succeed on her claim — that Attorney Engler was ineffective for failing to pursue a psychological evaluation and present its results as mitigating evidence at sentencing — she needed to show that her counsel's inaction in this regard lacked any reasonable basis. **See Reid**, 259 A.3d at 405. Instantly, however, we observe that Attorney Engler's testimony at the evidentiary hearing supports the PCRA court's ruling that this was not the case.

Pertinently, Attorney Engler testified that in his many discussions with Duncan leading up to her sentencing hearing, she never communicated to him any desire "to investigate [BWS] or how her being a victim of it could be a potential . . . mitigating factor." N.T., 3/24/25, at 72-73. Indeed, Attorney Engler indicated that Duncan never told him that she had been a victim of any violence or abuse by her ex-husband. **See id**. Instead, Duncan told Attorney Engler only about "abuse in the hands of her father" many years ago, as well

- 17 -

as her current medications and issues with depression. *Id*. Furthermore, Attorney Engler explained that Duncan was college educated, articulate, and involved in her case, and that she did not discuss anything with him that would allow him to infer she "needed a psychiatric evaluation[.]" *Id*. at 72.

Although Duncan provided conflicting testimony that she told Attorney Engler she wanted a psychological evaluation to present BWS as a mitigating circumstance, the PCRA court did not find her testimony credible, and chose to credit Attorney Engler's version of events. The court supported this credibility determination in large part due to the fact that both Duncan's ex-husband and J.D. each separately testified that her account of domestic abuse was untrue, with the former testifying that any bouts of violence between himself and Duncan occurred "[r]arely" and were mutual, and the latter testifying he had never seen Duncan's ex-husband "become physical with" Duncan in the years that he lived under their care. N.T., 3/24/25, at 52, 62. Moreover, the PCRA court further emphasized that despite Duncan's claims of long-standing abuse, she had never filed for protection from abuse during the many years that she and her ex-husband were romantically involved.[10]

Consequently, because we must accord great deference to the PCRA court's credibility determination in this regard, especially given that it presided

---

[10] We highlight that when the sentencing court afforded Duncan a final opportunity to speak prior to the imposition of her judgment of sentence, she again did not mention any alleged abusive behavior by her ex-husband. *See* N.T., 10/22/21, at 26.

over Duncan's case throughout her guilty plea and sentencing hearings, we conclude the record supports the PCRA court's determination that Attorney Engler had a reasonable basis to refrain from seeking a psychological evaluation for Duncan for the purpose of determining whether she was a victim of BWS. *See Dennis*, 17 A.3d at 305; *see also Martin*, 5 A.3d at 199; *Ford*, 44 A.3d at 1194. Accordingly, because Duncan failed to satisfy the second prong of the ineffectiveness test, we hold her tenth issue is without merit. *See Reid*, 259 A.3d at 405.

As we determine that each of Duncan's issues are either waived or meritless, we affirm the PCRA court's order dismissing her petition.

Motion to withdraw granted. Order affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 04/15/2026